IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Valerie Johnson Owens, | ) | C/A No.: 1:14-2254-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

A.      Procedural History

On July 28, 2010, Plaintiff filed an application for SSI in which she alleged her disability began on January 1, 2006. Tr. at 81, 116–22. Her application was denied initially and upon reconsideration. Tr. at 92–95, 102–04. On August 3, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Ivar E. Avots. Tr. at 47 (Hr'g Tr.).

The ALJ issued an unfavorable decision on October 24, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 11–24. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 5–7. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on June 10, 2014. [ECF No. 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 49 years old at the time of the hearing. Tr. at 52. She completed the eleventh grade and subsequently obtained a GED. Tr. at 52–53. Plaintiff had no past relevant work ("PRW"). Tr. at 56. She alleges she has been unable to work since January 1, 2006. Tr. at 116.

2.    Medical History

Plaintiff presented to Mark V. Burns, M.D. ("Dr. Burns"), for a consultative examination on July 21, 2006. Tr. at 180–82. She complained of a 20-year history of gouty arthritis with flares that occurred every three to four months and involved her toes, ankles, knees, elbows, shoulders, and fingers. Tr. at 181. Plaintiff stated she took anti-inflammatory medications during flares, but denied taking prophylactic medications. *Id.* Dr. Burns noted no abnormalities on examination. Tr. at 180–81, 183–84. He indicated Plaintiff had the ability to perform activities involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, and traveling. Tr. at 182. He recommended Plaintiff be started on Allopurinol to prevent gout flares. *Id.*

2

On August 10, 2010, Plaintiff presented to AnMed Health Minor Care for treatment of gout. Tr. at 187. Melissa Vaughn, R.N., observed Plaintiff's left knee to be slightly swollen. Tr. at 190. Lewis Jones, M.D., prescribed Indomethacin and discharged Plaintiff to her home. Tr. at 188.

Plaintiff again presented to AnMed Health Minor Care on October 13, 2010, for gout. Tr. at 199. She complained of discomfort in her right wrist that began two days earlier. *Id.* Richard Hanna, M.D. ("Dr. Hanna"), observed Plaintiff to have pain, swelling, and redness in her right wrist. Tr. at 200. Dr. Hanna prescribed Colchicine, Medrol, and Lortab and discharged Plaintiff to her home. *Id.*, Tr. at 202.

Plaintiff presented to Stuart M. Barnes, M.D. ("Dr. Barnes"), for a comprehensive medical examination on October 28, 2010. Tr. at 194–97. She stated she experienced gout flares every week or two that were brought on by physical exertion. Tr. at 194. Dr. Barnes noted that Plaintiff had a mild flare in her right elbow at the time of the examination. Tr. at 194. He described Plaintiff's mood, comprehension, and communications skills as normal and observed her to use no assistive device. Tr. at 195. He indicated Plaintiff's gait was "fairly balanced," but "slightly slow." *Id.* Plaintiff demonstrated normal range of motion ("ROM") in her bilateral shoulders, elbows, and wrists, but had some mild shoulder crepitus and complained of discomfort with passive range of motion. Tr. at 196. Dr. Barnes observed a 10-degree flexion contracture of the PIP joint on Plaintiff's left second finger, but her ROM in her fingers and hands was otherwise normal. *Id.* Plaintiff demonstrated some slight swelling in her PIP joints, but had no tenderness. *Id.* She had normal ROM of her lower extremities and normal

strength. *Id.* She was unable to squat beyond 80 degrees and her ability to bend her knees was limited by pain. *Id.* Plaintiff had no tremor or sensory deficit and her balance and reflexes were intact. *Id.* Dr. Barnes assessed probable gouty arthritis and possible cognitive dysfunction that may be related to prior alcohol. *Id.* Dr. Barnes recommended Plaintiff contact Anderson Free Clinic for regular medical follow up, evaluation of arthritis, and initiation of gout-modulating therapy. Tr. at 197. He also suggested Plaintiff undergo a full psychological evaluation to evaluate for cognitive dysfunction. *Id.*

Plaintiff presented to Dr. Hanna with pain in her right wrist and big toe on October 28, 2010. Tr. at 203. Dr. Hanna diagnosed gout, toe fracture, and toe pain. Tr. at 205. He instructed Plaintiff to take anti-inflammatory pain medicine and indicated she could return to work without restrictions. Tr. at 205–06.

On December 6, 2010, Plaintiff visited Brian Keith, Ph. D. ("Dr. Keith"), for a psychological evaluation. Tr. at 213–17. Plaintiff was neat in appearance and appropriately dressed. Tr. at 214. She was oriented in all spheres and correctly identified the day and month. *Id.* Her eye contact was appropriate and her speech was clear. *Id.* Plaintiff endorsed symptoms of depression and became tearful when she explained that her husband left her after 30 years of marriage. *Id.* Dr. Keith administered the Wechsler Adult Intelligence Scale–Fourth Edition ("WAIS–IV") and the Wide Range Achievement Test–Fourth Edition ("WRAT–4") and indicated Plaintiff put forth sufficient effort and results were considered valid. Tr. at 215. On the WAIS–IV, Plaintiff's full scale IQ was 68, her verbal comprehension index was 81, her perceptual reasoning index was 75, her working memory index was 69, and her processing speed index was 62. *Id.* Dr. Keith

indicated Plaintiff's scores on the WRAT–4 were commensurate to her full scale IQ of 68 and that she read on a sixth grade level. Tr. at 216. He indicated Plaintiff's cognitive profile was reflective of an individual who may have a learning disorder. *Id.* Dr. Keith diagnosed Plaintiff with learning disorder, not otherwise specified ("NOS"), and adjustment disorder with depression and indicated "rule out mild mental disability." *Id.* Dr. Keith indicated "[s]he should be able to complete moderately complex task[s], follow moderately detailed directions and complete one to two step activities." *Id.* He further indicated "[s]he may have some difficulty with concentration and maintain[ing] at satisfactory job pace." *Id.*

State agency consultant Debra C. Price, Ph. D. ("Dr. Price"), completed a psychiatric review technique on December 21, 2010, in which she considered organic mental disorders, affective disorders, and substance addiction disorders. Tr. at 219. She indicated Plaintiff had possible alcohol-related cognitive dysfunction, learning disorder, NOS, and that mild mental disability needed to be ruled out. Tr. at 220. She also indicated Plaintiff had adjustment disorder with depression and a history of alcohol abuse. Tr. at 222, 227. Dr. Price assessed Plaintiff to have mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Tr. at 229. She indicated Plaintiff was moderately limited with regard to the following abilities: to understand and remember detailed instructions; to carry out detailed instructions; and to maintain attention and concentration for extended periods. Tr. at 235.

On March 11, 2011, state agency medical consultant Luis M. Zuniga, M.D., determined that high cholesterol and allergies were not medically-determinable impairments and that gastroesophageal reflux disease ("GERD"), herpes simplex virus, and hypertension were non-severe impairments. Tr. at 86.

On March 15, 2011, state agency consultant Martin Koretzky, Ph. D., completed a psychiatric review technique. Tr. at 87. He considered organic mental disorders, affective disorders, and substance addiction disorder, including drug and alcohol abuse. *Id.* He found Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. *Id.*

Plaintiff presented to C. David Tollison, Ph. D. ("Dr. Tollison"), for a diagnostic evaluation on June 19, 2012. Tr. at 239–43. She endorsed a history of heavy alcohol consumption that included a half-pint of liquor and several beers daily, but stated she consumed four to six beers per week at the time of the evaluation. Tr. at 240. Plaintiff complained of symptoms of depression that included sleep disturbance, crying spells, low self-esteem, and low energy. *Id.* She indicated she had little interest in social activities and spent most of her time at home. *Id.* Plaintiff was able to provide basic information and was responsive to inquiry. Tr. at 241. She was oriented to time, place, person, and situation. Id. Her thought processes were slow, but intact. *Id.* Her memory for recent and remote events was intact. *Id.* Her cognitive processing was delayed. *Id.* Dr. Tollison administered the WRAT–3 and determined Plaintiff read on a fifth grade level. *Id.* He administered the WAIS–3 and found Plaintiff to have a verbal IQ of 71, a performance

IQ of 73, and a full scale IQ of 69. *Id.* Dr. Tollison diagnosed depressive disorder, NOS, anxiety disorder, NOS, rule out cognitive disorder, NOS, and mental retardation (mild). Tr. at 242.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on August 3, 2012, Plaintiff testified she lived in a house with her mother, daughter, and four grandchildren. Tr. at 51. She indicated she had been separated from her husband for about four years. Tr. at 52. She stated she had no income and received no governmental assistance aside from food stamps that were sent to her mother for the household. Tr. at 54.

Plaintiff testified that she attended regular classes and had no difficulty in school. Tr. at 67.

Plaintiff testified she left her last job because of gout flare-ups and had not worked since 2006. Tr. at 56, 57. She indicated she had been unable to hold any job for an extended period because her gout resulted in excessive absences. Tr. at 67. She indicated she had gout flares once every month or two and was mentally unable to keep a job. Tr. at 57–59. Plaintiff stated her gout flares occurred in her big toes, knee, wrist, and elbow and typically lasted for a week or two at a time. Tr. at 59, 61. She testified she used a cane or a walker during gout flares. Tr. at 73.

Plaintiff testified she was sad and depressed because her husband left her. Tr. at 64. She indicated she had crying spells and became upset over things that would likely

7

not bother most people. Tr. at 65–66. She stated she recently had more difficulty concentrating and that her sleep was disturbed. Tr. at 67–68.

Plaintiff testified she was taking no prescription medications and seeing no doctors because she did not have Medicaid or a source of income. Tr. at 62. She indicated she occasionally took Advil or Tylenol for headaches and gout. Tr. at 70.

Plaintiff testified she did not have a driver's license because she had lost it after being convicted of driving under the influence ("DUI"). Tr. at 54. She denied attending church, visiting friends and family, dating, attending sporting events, shopping, visiting the post office, going to the bank, and dining in restaurants. Tr. at 63–64. She stated she typically awoke between 10:00 and 11:00 a.m. and that she went to bed between 12:00 and 1:00 a.m. Tr. at 68–69. Plaintiff testified she watched television throughout the day. Tr. at 69. She stated she prepared meals and babysat her grandchildren when she was able to do so. Tr. at 57, 69. She indicated she sometimes helped with grocery shopping. Tr. at 69. Plaintiff stated she washed dishes "every now and then," made her bed, and cleaned her room, but denied performing other housework. Tr. at 71.

Plaintiff indicated she smoked cigarettes when others gave them to her. Tr. at 74. She indicated she drank beer in the past, but it did not interfere with her ability to work. Tr. at 74–76.

### b.    Vocational Expert Testimony

Vocational Expert ("VE") Karl S. Weldon reviewed the record and testified at the hearing. Tr. at 76–79. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could concentrate, persist, and work at pace to do simple, routine,

repetitive tasks with one to two-step instructions for two hours at a time over the course of an eight-hour day. Tr. at 77. The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified medium, unskilled jobs as a laundry clerk, *Dictionary of Occupational Titles* ("*DOT*") number 369.687-026, with 1,300 jobs in the upstate of South Carolina and 472,000 jobs in the national economy and a hospital housekeeping worker, *DOT* number 323.687-010, with 800 jobs in the upstate of South Carolina and 887,000 jobs in the national economy. *Id.* The VE also identified a light, unskilled job as an inspector, *DOT* number 741.687-010, with 2,100 jobs in the upstate of South Carolina and 472,000 jobs in the national economy. Tr. at 77–78. The ALJ asked if the jobs identified could be performed by an individual who was limited to medium work; could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; could sit, stand, or walk for six hours in an eight-hour workday; and was limited mentally as described in the first hypothetical. Tr. at 78. The VE testified that the identified jobs could be performed. *Id.*

Plaintiff's attorney asked the VE to indicate how many days an individual could miss each month and still maintain gainful employment. *Id.* The VE testified that an individual could miss approximately two days of work per month and maintain gainful employment. Tr. at 78–79. Plaintiff's attorney asked the VE what degree of concentration was required to perform the identified jobs. Tr. at 79. The VE indicated that an individual would need to concentrate and persist for two hours at a time out of a workday. *Id.* Plaintiff's attorney asked the VE if an individual could maintain gainful employment if

she required frequent and unscheduled rest periods. *Id.* The VE indicated that an individual with those limitations could not perform substantial gainful work. *Id.*

### 2.    The ALJ's Findings

In his decision dated October 24, 2012, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since July 28, 2010, the application date (20 CFR 416.971 *et seq.*).
2. The claimant has the following severe combination of impairments: learning disorder, gout, adjustment disorder, a history of alcohol dependence, and cognitive disorder (20 CFR 416.920(c)).
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work, which includes sitting, walking, or standing for 6 hours in an 8-hour workday and lifting, carrying, pushing or pulling up to 25 pounds frequently and 50 pounds occasionally. In addition, I find that the claimant has the mental stability and cognitive ability to concentrate, persist and work at a pace to do simple, routine, repetitive tasks with one to two step instructions for 2-hour periods in an 8-hour day and interact appropriately with the public, co-workers and supervisors in a stable routine setting.
5. The claimant has no past relevant work (20 CFR 416.965).
6. The claimant was born on September 2, 1962 and was 47 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).
7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
8. Transferability of job skills is not material because the claimant does not have past relevant work (20 CFR 416.968).
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 28, 2010, the date the application was filed (20 CFR 416.920(g)).

Tr. at 16–24.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

(1)     The ALJ failed to properly evaluate Dr. Tollison's opinion; and

(2)     The ALJ erroneously concluded that Plaintiff's impairments did not meet Listing 12.04.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability

11

claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82-62

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 416.920(h).

(1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157– 58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

      B.      Analysis

            1.      Dr. Tollison's Opinion

Plaintiff argues the ALJ erred in disregarding Dr. Tollison's opinion. [ECF No. 17 at 7]. She contends that the ALJ's stated reasons for rejecting Dr. Tollison's opinion were inadequate. *Id.* at 9.

The Commissioner argues that substantial evidence supports the ALJ's evaluation of Dr. Tollison's assessment. [ECF No. 18 at 8]. She maintains that the ALJ adequately considered the criteria set forth in 20 C.F.R. § 416.927 in according little weight to Dr. Tollison's assessment. *Id.*

The Social Security Administration's rules require that ALJs carefully consider medical opinions on all issues. SSR 96-5p. Opinions from treating medical sources are

accorded deference. SSR 96-2p. However, if the record lacks an opinion from a treating

medical source or if the ALJ declines to give the treating source's opinion controlling

weight, the ALJ should consider "all of the following factors" to determine the weight to

be accorded to every medical opinion in the record: examining relationship; treatment

relationship, including length of treatment relationship and frequency of examination and

nature and extent of treatment relationship; supportability; consistency with the record as

a whole; specialization of the medical source; and other factors. 20 C.FR. § 416.927(c);

s*ee also Johnson*, 434 F.3d at 654. The ALJ's decision must explain the weight accorded

to all opinion evidence. 20 C.F.R. § 416.927(e)(2)(ii).

> Dr. Tollison indicated the following:

> Based upon my evaluation of the patient, review of medical records, and
> results of psychological testing, it is my opinion Ms. Owens is unlikely to
> meet the typical requirements of productive employment including
> concentration, persistence, and pace. She is expected to have difficulty
> learning and remembering instructions as well as maintaining concentration
> over time. This deficit is likely the result of the distracting nature of her
> pain and depression and compounded by limited intellectual functioning.
> She is further expected to have difficulty responding appropriately to
> changes in the workplace due to a lack of cognitive flexibility and coping
> skills. During episodes of gout, it is unlikely she would be able to maintain
> physical production standards and is expected to require frequent and
> unscheduled rest periods. Her gout also is likely to result in unscheduled
> absences. Finally, work pressures, stress and demand situations are
> expected to result in deterioration in psychological and physical
> functioning. Her condition is chronic and expected to continue over the
> next twelve or more months.

Tr. at 243.

> The ALJ considered Dr. Tollison's opinion, but gave it little weight because Dr.

Tollison examined Plaintiff only once; he did not have a treatment relationship with

Plaintiff; he assessed limitations that were inconsistent with his treatment notes; his opinion contrasted sharply with the other evidence and opinions in the record; and the limitations he identified were inconsistent with Plaintiff's lack of mental health treatment. Tr. at 22.

The undersigned recommends the court find the ALJ adequately considered Dr. Tollison's opinion based on the criteria set forth in 20 C.F.R. § 416.927(c). The ALJ considered the examining relationship between Plaintiff and Dr. Tollison, but pointed out that Dr. Tollison's opinion was drawn from a one-time examination. *See* Tr. at 22. The ALJ correctly concluded that no treatment relationship existed between Plaintiff and Dr. Tollison based on indications in the report that Plaintiff was seen for a diagnostic evaluation, as well as a lack of treatment notes. *See id.*; *see also* Tr. at 239. Substantial evidence supports the ALJ's determination that the limitations identified by Dr. Tollison were inconsistent with his general observations during the assessment. *See id.*; *see also* Tr. at 241 (Plaintiff was able to provide basic information; was responsive to inquiry; was oriented to time, place, person, and situation; had slow, but intact thought processes; and had intact recent and remote memory.).

The ALJ identified inconsistencies between the restrictions identified by Dr. Tollison and the other examinations and opinions in the record and reconciled the inconsistencies by according little weight to Dr. Tollison's opinion and great weight to the opinions of Drs. Keith and Price. *See* Tr. at 22. It is the ALJ's duty to reconcile inconsistencies in the evidence. *Hays*, 907 F.2d at 1456; *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). On October 28, 2010, Dr. Barnes described Plaintiff's mood,

comprehension, and communications skills as normal. Tr. at 195. On December 6, 2010,

Dr. Keith indicated Plaintiff may have some difficulty with concentration and pace, but

that she could complete moderately complex tasks, follow moderately detailed directions,

and complete one to two step activities. Tr. at 216. On December 21, 2010, Dr. Price

found that Plaintiff was capable of performing simple, repetitive work tasks. Tr. at 237.

Nothing in the record suggests that Dr. Tollison's assessment was any more detailed or

that his opinion should carry any greater weight than Dr. Keith's opinion, which was also

based on a one-time evaluation and was supported by Dr. Price's opinion. Therefore, the

ALJ adequately reconciled the inconsistencies between the restrictions identified by Dr.

Tollison and those set forth by the other medical sources by according greater weight to

the other observations and opinions in the record than to those of Dr. Tollison.

The ALJ also supported his decision to accord little weight to Dr. Tollison's

opinion by stating that "the claimant has not pursued the treatment one would expect if

she were truly disabled, as the doctor reported." *See id.* To obtain benefits, a claimant

must follow all prescribed treatment that can restore her ability to work and failure to

follow prescribed treatment without good cause will result in a finding that the claimant

is not disabled. 20 C.F.R. § 416.930(a),(b). Furthermore, "the individual's statements

may be less credible if the level or frequency of treatment is inconsistent with the level of

complaints, or if the medical reports or records show that the individual is not following

the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p. An

ALJ is prohibited from drawing negative inferences about claimant's credibility without

considering her explanations as to her reasons for noncompliance and cannot deny a

claimant benefits based on the claimant's failure to obtain treatment she cannot afford. *See id.*; *see also Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984). Although Plaintiff indicated she lacked insurance, Dr. Barnes referred her to a free clinic for evaluation and treatment. Tr. at 197. Because the record consists of no mental health treatment notes and the only mentions of depression and other mental health complaints occurred during consultative evaluations, the ALJ reasonably concluded that Plaintiff's level and frequency of mental health treatment was inconsistent with her complaints to Dr. Tollison. Furthermore, he reasonably concluded that Plaintiff had no good reason for failing to seek treatment at the free clinic, as recommended by Dr. Barnes. *See* Tr. at 21–22.

In light of the foregoing, the undersigned recommends a finding that the ALJ evaluated the opinion evidence as required by 20 C.F.R. § 416.927(c) and that his decision to accord little weight to Dr. Tollison's opinion was supported by substantial evidence.

### 2. Listing 12.04

Plaintiff argues that Dr. Tollison's evaluation was supported by the evidence in the record and directed a decision that Plaintiff was disabled under Listing 12.04. [ECF No. 17 at 7]. The Commissioner maintains that substantial evidence supports the ALJ's conclusion that Plaintiff's impairment did not satisfy the part B criteria under Listing 12.04. [ECF No. 18 at 13–16].

To meet Listing 12.04, a claimant must have an affective disorder characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome

and must meet the requirements in both parts A and B or the requirements in part C.[3] 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04. Part A requires a depressive syndrome, a manic syndrome, or a bipolar syndrome.[4] 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(A). Specific signs of a depressive syndrome required to meet the Listing include at least four of the following: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; and hallucinations, delusions, or paranoid thinking. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(A)(1). To meet part B of Listing 12.04, the claimant must have at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(B).

---

[3] To meet Part C of Listing 12.04, a claimant must have a medically-documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and either (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly-supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(C). Because the parties do not address the criteria under part C, the undersigned's review is limited to parts A and B of Listing 12.04.
[4] Because Plaintiff does not allege a manic or bipolar syndrome, the undersigned considers only the requirements to prove a depressive syndrome under Listing 12.04.

Dr. Tollison indicated Plaintiff had a depressive syndrome characterized by loss of interest in almost all activities, sleep disturbance, psychomotor agitation, decreased energy, feelings of worthlessness, and difficulty concentrating or thinking. Tr. at 240. Although Dr. Tollison did not use the specific term "marked" to described Plaintiff's limitations, his descriptions suggested Plaintiff had marked restriction in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. *See* Tr. at 240–41.

The ALJ indicated he considered Listing 12.04, but determined that "[t]he severity of the claimant's mental impairments, considered singly and in combination" did not meet or equal the criteria of the Listing. Tr. at 16. The ALJ declined to address the criteria under part A of the Listing, but found that Plaintiff did not meet the criteria under part B. Tr. at 16–17. He found that Plaintiff had moderate restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. Tr. at 17.

The undersigned recommends the court find that the ALJ's conclusion that Plaintiff's impairment did not meet the requirements of Listing 12.04 was supported by substantial evidence. Because the ALJ concluded Plaintiff did not meet the criteria in part B and because an impairment must satisfy both the criteria in part A and part B for a claimant to be found disabled under Listing 12.04, it was unnecessary for him to address the criteria in part A. In addressing part B, the ALJ relied on the evidence in the record, including the opinions of Drs. Keith and Price, and adequately explained his findings. Although Dr. Price indicated Plaintiff had only mild restriction of activities of daily

living and difficulties in maintaining social functioning, the ALJ found Plaintiff to have moderate functional limitations in both areas based on Plaintiff's reports and the examination notes. *See* Tr. at 17, 229. The ALJ explained his conclusion that Plaintiff had moderate restriction of activities of daily living by pointing out that while she testified that she mostly stayed in her room and watched television, she also acknowledged that she kept her grandchildren, cooked meals, washed dishes, made her bed, listened to music, shopped for groceries, and read as a hobby. Tr. at 17. The ALJ indicated that, although Plaintiff stated in her testimony that she did not go outside or attend social functions, the record reflected otherwise. *Id.* He cited Plaintiff's indications that she talked on the telephone, shopped at Wal-Mart, dined out once a month, and visited a club. *Id.* He acknowledged Plaintiff's indications of frequent interaction with her family and her report that she got along well with others. *Id.* In concluding that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, the ALJ pointed to Dr. Keith's statement, which suggested the impairment to Plaintiff's concentration and pace was temporary and resulted from her marital separation and that she would benefit from counseling or therapy. *Id.* Dr. Tollison indicated Plaintiff had marked limitations in activities of daily living, social functioning, and concentration, persistence, and pace, but the ALJ adequately explained his reasons for according little weight to Dr. Tollison's opinion. Therefore, the undersigned recommends a finding that the ALJ's determination that Plaintiff's impairment did not meet Listing 12.04 was adequately explained by the ALJ and supported by substantial evidence.

III.    Conclusion and Recommendation

        The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

        IT IS SO RECOMMENDED.

                                        *Shiva V. Hodges*

May 7, 2015                             Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).